UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN J. COLE,

    Plaintiff,

No. 1:19-cv-00222

v

HON. JANET T. NEFF

CHRIS PREVETTE, Detective Sgt. MSP,

MAG. ELLEN S. CARMODY

    Defendant.

| Steven J. Cole | Mark E. Donnelly (P39281) |
|---|---|
| *Plaintiff, Pro Se* | Assistant Attorney General |
| 4058 Crestview Ln. | Attorney for Defendant |
| Muskegon, MI 49442 | Complex Litigation Division |
| 231.286.1441 | P.O. Box 30736 |
| | Lansing, MI 48909 |
| | 517.335.3055 |
| | donnellym@michigan.gov |

_____/

## JOINT STATUS REPORT

A Rule 16 Scheduling Conference is scheduled for June 25, 2019 at 10:00 a.m., before Hon. Ellen S. Carmody. Appearing for the parties as counsel will be:

    Steven J. Cole, Pro Se Plaintiff
    Mark Donnelly for Defendant

1. **Jurisdiction:**

The basis for the Court's jurisdiction is:  Federal question jurisdiction.  28 USC §1331.

2. **Jury or Non–Jury:**

Both parties have demanded a jury.

1

3. **<u>Judicial Availability</u>:**

The parties agree to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial, and to order the entry of final judgment.

4. **<u>Statement of the Case</u>:**

**Plaintiff:** On March 24, 2016 about 9:30am, State Police Officer Detective Sgt. Chris Prevette, along with three additional state police officers and one Norton Shores Police officer, knocked on our door and asked if they could come in. My wife allowed them in. Officer Prevette said they were here to speak to our son Christopher Cole. My wife told Officer Prevette he was sleeping and she would go wake him up. Officer Prevette stopped her and said only he could do that. My wife stood between Officer Prevette and the bedroom door and told officer Prevette she needed to call her husband. Officer Prevette told her no and nudged her aside and went to Christopher's room where he was sleeping without knocking entered his room, got 6' from his face and yelled for him to wake up and that they needed to talk to him out in their car. My son told me the first thing they said to him when they got out to the car was that they "knew he was gay" and that they "had enough to bury him". After a few minutes of talk they said if he let them look at his computer and they didn't find anything it would be alright. As my son knew he had nothing on his computer he said o.k. My son thought he would be going inside to get his computer for them, but when he got back inside they were already tearing his room apart and would not let him leave the living room.

I arrived home around 10 am. Officer Prevette came out to my car, opened the door and asked "are you Mr. Cole?" I told him I was and Officer Prevette said come inside and I will tell you what is going on. Officer Prevette then said they tried to get my wife to call me but that she said she would just let me come home. As I entered my home my told me she wanted to call me but they had told her no, she could not call me. Officer Prevette then told me and my wife that Christopher had given them verbal permission to look at his computer and that it was specific to his computer. I then asked "What is going on?" Officer Prevette then said that Google had identified my IP address and SOMEONE had downloaded 6 images of child pornography from that IP address. I asked Officer Prevette if Google could be wrong? Officer Prevette then said that Google was a multi-billion dollar company and did not make mistakes.

Myself, my wife, and my son Christopher were held in my living room under guard. Every 5 to 7 minutes Officer Prevette would come into the living room and ask my son to confess. Not one time did he say what the confession was for. Our guard told us that if we had to use the living room he had to have one foot in the door, so when my son had to use the bathroom the guard went with him. I went

2

into the kitchen to see what was going on in the bedroom, I saw the top mattress help up and Officer Prevette slid his hand over the top of the box spring. Then I heard the dresser drawers being opened and closed. I knew they were searching without my permission. Officer Prevette saw me looking, then wanted me to go out to his car with him so he could tell me what was really going on. In his car Officer Prevette showed me a piece of paper that read "User theeeldonan downloaded 6 images at 15:25pm on October 15th 2015 on Google plus pages. I told Officer Prevette that was not his Google sign on and told him 4 letters were wrong and it's missing some numbers. I then got out of Officer Prevette's car and he then ran over to me and asked me if I owned a .22 pistol. I said "yes", and that it was buried under a mountain of crap in the closet. I returned to my living room and Officer Prevette returned to the bedroom. He came out again and demanded a confession from my son and continued on with this for over three hours.

I told Officer Prevette twice that if he believed my son had done something, to take him and his computer and leave. Officer Prevette ignored me. Ten minutes later I again told him to take Christopher and his computer and leave my home. Again Officer Prevette ignored me. 15 minutes later my wife told him to take Christopher and his computer and GET OUT, and that we would post his bail if we can afford it. Officer Prevette continued to pursue a confession from my son saying "Do you want us to keep doing this to your parents?" And "don't you love your parents?" that you would let us keep doing this to them.

Finally I told Officer Prevette they were no longer welcome in my home as they had no warrant. Officer Prevette put his finger in my face and told me "NO, he was sending a man to get a warrant". They continued searching and demanding a confession from my son. Their warrant arrived 30 minutes later. Officer Prevette then asked Christopher to confess again. Christopher then said "I am done talking to you", to which Officer Prevette then said "since Christopher does not want to cooperate we are going to take everything in our house. They took my wife's computer, my computer, Christopher's computer and my wife's old laptop that didn't work, many Dvd's but left more than they took. On their way out of my home they told Christopher he needed to initial a document. They said if he did not initial it that we would not get any of our belongings back. So Christopher initialed it and I and my wife witnessed him initial it. It was just after 1 pm when they left our home.

The next day March 25, 2016 I hired attorney Ryan Maesen. Ryan Maesen called Officer Prevette that afternoon and was told Officer Prevette says he found one image on Christopher's cell phone. We knew this could not be true as Christopher's cell phone did not work.

Plaintiff further alleges that he has proof that Officer Chris Prevette has committed forgery on official documents. My wife left in a state of depression. My family totally destroyed by Officer Prevette a man with no honor or integrity

that does not mind committing perjury, still I have always been willing to take two steps backwards if it would help both parties move forward.

Violation of 4th amendment, outrageous behavior, police misconduct.

**Defendant:** Defendant denies Plaintiff's factual allegations. He acted lawfully in entering and searching Plaintiff's premises and property – either pursuant to consent or a warrant. In fact, Christopher Cole pleaded guilty to 3 counts of possessing Child Sexually Abusive Material in violation of MCL 750.145C4A and one count of using a computer to commit a crime in violation of MCL 752.7973D. On December 17, 2018 Christopher Cole was sentenced to 5 - 15 years in prison and was remanded to the custody of the Michigan Department of Corrections.

Defendant denies violating Plaintiff's 4th Amendment rights and asserts that he is entitled to qualified immunity.

5. **Prospects of Settlement:**

The status of settlement negotiations is: None. Settlement is unlikely at this time. Plaintiff estimates damages in excess of $40,000.

6. **Pendent State Claims:**

This case does not include pendent state claims.

7. **Joinder of Parties and Amendment of Pleadings:**

The parties expect to file all motions for joinder of parties to this action and to file all motions to amend the pleadings by August 1, 2019.

8. **Disclosures and Exchanges:**

    (a) Fed. R. Civ. P. 26(a)(1) requires initial disclosures unless the Court orders otherwise. The parties propose the following schedule for Rule 26(a)(1) disclosures:

    Plaintiff's initial disclosures by August 1, 2019.
    Defendant's initial disclosures by August 31, 2019.

    (b) The Plaintiff expects to be able to furnish the names of Plaintiff's expert witness(es) by August 15, 2019. Defendant expects to be able to furnish the names of defendant's expert witness(es) by September 13, 2019.

    (c) It would be advisable in this case to exchange written expert witness reports as contemplated by Fed. R. Civ. P. 26(a)(2). Reports, if required, should be exchanged according to the following schedule:

       Plaintiff by September 27, 2019.
       Defendant by October 25, 2019.

    (d)    The parties are unable to agree on voluntary production at this time.

9.    **Discovery:**

The parties believe that all discovery proceedings can be completed by November 30, 2019.  The parties recommend the following discovery plan:  Plaintiff wishes to have his expert witnesses inspect the computers seized from his home.

Defendant intends to take the depositions of the Plaintiff, his wife and son.

Defendant also anticipates sending requests to admit, interrogatories and requests to produce.  Defendant is comfortable with the presumptive limitations set forth in the Rules.  Depositions of expert witnesses should only occur after the deadline for providing a written report, if required.

10.    **Disclosure or Discovery of Electronically Stored Information:**

The parties do not believe that production of electronically stored information will be an issue in this case but anticipate working cooperatively should the need arise.  As of today, the parties have not agreed on a plan.

11.    **Assertion of Claims of Privilege or Work−Product Immunity After Production:**

The parties have not agreed on a procedure to address claims of privilege or work product immunity for items inadvertently produced during discovery, but Defendant does not believe it will be an issue in this case.

12.    **Motions:**

The parties acknowledge that a pre−motion conference is required by Judge Neff before filing any dispositive motion, and no motion papers shall be filed until the motion has been fully briefed.  However, because the parties have consented to a Magistrate Judge conducting all proceedings in this case, it does not appear this will be required.

The parties acknowledge that W.D. Mich. L. Civ. R. 7.1(d) requires the moving party to ascertain whether the motion will be opposed, and in the case of all nondispositive motions, counsel or pro se parties involved in the dispute shall confer in a good−faith effort to resolve the dispute.  In addition, all nondispositive motions shall be accompanied by a separately filed certificate.

The following dispositive motions are contemplated by each party:

Defendant anticipates filing a dispositive motion either under Rule 12(c) or 56. Additionally, Defendant may file a motion asking this Court to order the Plaintiff to pay the costs of his previously dismissed identical complaint and to stay this matter until those costs have been paid pursuant to Fed. R. Civ. P. 41(d).

Plaintiff expects to file 3 or 4 undisclosed motions.

The parties anticipate that all pre−motion conference requests will be filed by: not applicable.

13.  **Alternative Dispute Resolution:**

In the interest of conserving judicial resources, the parties acknowledge that the Court will require the parties to participate in some form of Alternative Dispute Resolution.

The parties recommend that this case be submitted to the following method(s) of alternative dispute resolution: Settlement Conference with another Magistrate Judge after dispositive motions have been heard.

14.  **Length of Trial:**

Counsel estimate the trial will last approximately 2 days total, allocated as follows: 1 day for Plaintiff's case, 1 day for Defendant's case.

15.  **Electronic Document Filing System:**

Counsel are reminded that Local Civil Rule 5.7(a) requires attorneys to file and serve all documents electronically, by means of the Court's CM/ECF system, unless the attorney has been specifically exempted by the Court for cause or a particular document is not eligible for electronic filing under the rule. The Court expects all counsel to abide by the requirements of this rule. *Pro se* parties (litigants representing themselves without the assistance of a lawyer) must submit their documents to the Clerk on paper, in a form complying with the requirements of the local rules. Counsel opposing a *pro se* party must file documents electronically but serve *pro se* parties with paper documents in the traditional manner.

16.  **Other:**

Set forth any special characteristics that may warrant extended discovery, accelerated disposition by motion, or other factors relevant to the case:

Defendant asks this Court to order the Plaintiff to pay the costs of his previously dismissed identical complaint and to stay this matter until those costs have been paid pursuant to Fed. R. Civ. P. 41(d).

|  |  |
|---|---|
| /s/ *Steven J. Cole* (w/consent)<br>Steven J. Cole<br>*Plaintiff, Pro Se*<br>4058 Crestview Lane<br>Muskegon, MI 49442 | Respectfully submitted,<br><br>Dana Nessel<br>Attorney General<br><br>s/ *Mark E. Donnelly*<br>Mark E. Donnelly (P39281)<br>Assistant Attorney General<br>Attorney for Defendant<br>Complex Litigation Division<br>P.O. Box 30736<br>Lansing, MI 48909<br>517.373.6434<br>donnellym@michigan.gov<br>P39281 |